F I L E D
Clerk
District Court

DEC 17 2025

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

|  |  |
|---|---|
| ZAJI O. ZAJRADHARA, | Case No. 1:24-cv-00011 |
| Plaintiff, | **SECOND SCREENING ORDER** |
| v. | **DENYING MOTION TO RECUSE (ECF NO. 10);** |
| AMER YOUNIS, YOUNIS ART STUDIO, INC. *dba* MARIANA [SIC] VARIETY NEWS & VIEWS, and BRYAN MANABAT, | **DISMISSING WITH PREJUDICE CIVIL RIGHTS CLAIM (42 U.S.C. § 1983); AND** |
| Defendants. | **DISMISSING WITHOUT PREJUDICE STATE LAW CLAIMS WITHOUT LEAVE TO AMEND** |

Before the Court are the following three filings, all filed by pro se Plaintiff Zaji O. Zajradhara: (1) Amended Complaint and Request for Injunction (ECF No. 9); (2) Motion for Recusal of Judge Ramona V. Manglona (ECF No. 10); and (3) Motion for Status Update and to Expedite (ECF No. 11). In his Amended Complaint, Plaintiff asserts the state law claims of defamation per se and intentional infliction of emotional distress, and the federal claim of First Amendment Retaliation under 42 U.S.C. § 1983. (Am. Compl. 3.) For the reasons set forth below, the Court will deny the Motion for Recusal, dismiss the Amended Complaint's federal claim with prejudice, dismiss the state law claims without prejudice and without leave to amend, deny as moot the Motion for Status Update and to Expedite, and direct the Clerk of Court to close the case.

/ /

/

1

## I.     BACKGROUND

Plaintiff initiated this action on July 23, 2024, when he filed an Application to Proceed in District Court Without Prepaying Fees or Costs (ECF No. 1) and a Complaint and Request for Injunction (ECF No. 2) alongside three other motions (ECF Nos. 3-5).  In his four-page Complaint, Plaintiff alleged that three defendants—a newspaper company, the newspaper's president and managing officer, and a journalist affiliated with the newspaper and a member of the United Filipino Organization ("UFO")—published a series of false and defamatory articles concerning him as part of "a malicious campaign by the UFO to silence Plaintiff's advocacy and to damage his reputation."  (Compl. 3, ECF No. 2.)  Plaintiff further alleged that he sent cease-and-desist notices to Defendants, but that Defendants ignored the notices and continued to publish defamatory articles, which conduct is suggestive of "a calculated effort to shape public perception in favor of the UFO and against Plaintiff" and "can be interpreted as retaliation for exercising his First Amendment rights to criticize the [Commonwealth of the Northern Mariana Islands (CNMI)] government and its policies."  (*Id.*)  Plaintiff did not separately enumerate counts against Defendants in his Complaint; however, Plaintiff invoked 42 U.S.C. § 1983 and demanded relief in the form of an injunction against Defendants, $100,000,000.00 in compensatory damages "for the harm to Plaintiff's reputation, loss of employment opportunities, and emotional distress," punitive damages, and attorneys' fees and costs.  (*Id.* at 2, 4.)

On January 14, 2025, the Court issued a screening order pursuant to 28 U.S.C. § 1915(e)(2)(B).  In that order, the Court granted Plaintiff's Application but dismissed the Complaint with leave to amend.  (Screening Order 2, 11-12, ECF No. 6.)  The Court construed Plaintiff's Complaint as alleging two claims: (1) a claim under 42 U.S.C. § 1983 for Defendants' alleged violations of Plaintiff's rights under the First and Fourteenth Amendments; and (2) a state-

law defamation claim.  (*Id.* at 3.)  The Court dismissed Plaintiff's 42 U.S.C. § 1983 claim after

finding that Plaintiff had failed to state a claim upon which relief may be granted.  (*Id.* at 7-10

(explaining that Plaintiff's factual allegations did not plausibly establish that Defendants were state

actors, their conduct constituted state action, or that they acted under color of state law).)  The

Court then dismissed Plaintiff's defamation claim because Plaintiff failed to plead sufficient facts

to establish diversity jurisdiction over his state-law claim.  (*Id.* at 10-11 (noting Plaintiff alleged

that all Defendants were CNMI citizens, with street addresses in Saipan, and that Plaintiff was "a

citizen of the United States and residing in the CNMI," but did not allege Plaintiff's own

citizenship).)  The Court accordingly dismissed the entirety of Plaintiff's Complaint but with leave

to amend, with the explicit instruction that "[t]he first amended complaint must—independent of

the original complaint—allege sufficient facts regarding each named Defendant."  (*Id.* at 11-12.)

On April 3, 2025, Plaintiff filed a four-page[1] Amended Complaint and Request for

Injunction against Amer Younis, the President/Managing Officer of Mariana [sic] Variety News &

Views; Younis Art Studio, Inc. dba Mariana Variety News & Views; and Bryan Manabat, a

journalist at Mariana Variety News & Views. On the same day, he filed a Motion for Recusal of

the undersigned.  In his Amended Complaint, Plaintiff enumerates three distinct "Legal Claims":

(1) a state-law defamation *per se* claim; (2) a state-law intentional infliction of emotional distress

(IIED) claim; and (3) a 42 U.S.C. § 1983 claim based on Defendants' acting "under color of state

law or in concert with state actors" to retaliate against Plaintiff "for exercising his First Amendment

rights."  (Am. Compl. 3, ECF No. 9).  Plaintiff largely repeats—almost verbatim—the factual

allegations he first set forth in his original Complaint.  (*Compare id.* 2-3 (items III.A and III.B),

---

[1] Although the Amended Complaint as docketed has five pages, the fourth page terminates with Plaintiff's
signature and the final page is entirely blank.  (*See* Am. Compl. 4-5, ECF No. 9.)

1    *with* Compl. 3 (items under III.C).)  In addition, Plaintiff demands the same relief.  (*Compare* Am.

2    Compl. 4 (item IV), *with* Compl. 4 (item V).)

3          As to his Motion for Recusal, Plaintiff contends that the Court has "demonstrated bias and

4    violations of Plaintiff's constitutionally protected rights to access the courts in prior proceedings

5    (Cases 1:24-cv-00006 and 1:22-cv-00014)."  (Mot. for Recusal 1, ECF No. 10.)  Plaintiff criticizes

6    the "repeated use of screening orders to summarily dismiss, without opportunity to amend or argue

7    constitutional merits," and accordingly moves for reassignment of this instant case to a different

8    judicial officer.  (*Id.* at 1-2.)

9          Subsequently, on August 19, 2025, Plaintiff filed a Motion for Status Update and to

10   Expedite.  Plaintiff complains of the delay in the handling of his case (Mot. for Status Update 1-2,

11   ECF No. 11), contends that such delay demonstrates an "unconstitutional bias against him as a pro

12   se litigant advocating for accountability in the Commonwealth of the Northern Mariana Islands"

13   (*id.* (detailing, *inter alia*, judicial misconduct complaints filed against the undersigned and the

14   Hon. Frances Tydingco-Gatewood, Chief Judge, U.S. District Court of Guam)), further contends

15   that the Court's use of screening orders violates his constitutional right to access the courts (*id.* at

16   3-4), and emphasizes that Defendants are permitted to continue to inflict injury upon him in the

17   absence of any court action (*id.* at 4-5).  Plaintiff requests a status update with explanation for the

18   delay and apparent bias caused by the same, service of process on Defendants forthwith, and

19   expedited adjudication of his claims.  (*Id.* at 5.)

20                              **II.    ANALYSIS**

21         The Court first addresses Plaintiff's Motion for Recusal before turning to whether the

22   Amended Complaint meets the requirements for setting forth a claim upon which relief can be

23   granted.  As the Court finds that dismissal of Plaintiff's federal claim with prejudice and state law

claims without prejudice and without leave to amend is appropriate, the Court need not address

the arguments raised in Plaintiff's Motion for Status Update and to Expedite.

**A.  Plaintiff's Motion for Recusal**

    **1.  Legal Standard**

        Plaintiff moves under 28 U.S.C. § 144 and 28 U.S.C. § 455(a) to request the undersigned

to recuse from hearing this matter.  The first cited statute provides in full:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.  As to the second cited statute, it provides in relevant part:

> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> **(b)** He shall also disqualify himself in the following circumstances:
>
> > **(1)** Where he has a personal bias or prejudice concerning a party . . . .

28 U.S.C. § 455(a), (b)(1).  The U.S. Court of Appeals for the Ninth Circuit has explained:

> The test for personal bias or prejudice in section 144 is identical to that in section 455(b)(1), and the decisions interpreting this language in section 144 are controlling in the interpretation of section 455(b)(1).  Consequently, a motion properly brought pursuant to section 144 will raise a question concerning recusal under section 455(b)(1) as well as section 144.

> . . . [W]e have ruled that section (b)(1) simply provides a specific example of a situation in which a judge's "impartiality might reasonably be questioned" pursuant to section 455(a). . . . The same substantive standard will be applied to each section.

*United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) (internal citations omitted); *see also United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) ("The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same:  Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  (quoting *United States v. Hernandez*, 109 F.3d 1430, 1453 (9th Cir. 1997))).  Furthermore,

> Although the substantive test for bias or prejudice is identical in sections 144 and 455, the procedural requirements of the two sections are different. . . .

> Section 144 expressly conditions relief upon the filing of a timely and legally sufficient affidavit.  If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for recusal under section 144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for a determination of its merits.

> Section 455, on the other hand, sets forth no procedural requirements.  That section is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge.  Moreover, section 455 includes no provision for referral of the question of recusal to another judge; if the judge sitting on a case is aware of grounds for recusal under section 455, that judge has a duty to recuse himself or herself.

> In light of the difference in procedures for sections 144 and 455, it is apparent that the two sections are not redundant but are complementary, even when the only ground for recusal alleged is bias or prejudice.  A party desiring referral to a second judge upon a determination of legal sufficiency may invoke the provisions of section 144 by filing a motion under that section accompanied by a timely and sufficient affidavit.  Such a motion should also prompt the judge to whom the motion is directed to determine independently whether all the circumstances call for recusal under the self-enforcing provisions of section 455(a) & (b)(1), a matter which rests

6

within the sound discretion of the judge[.]   Thus, section 455 modifies section 144 in requiring the judge to go beyond the section 144 affidavit and consider the merits of the motion pursuant to section 455(a) & (b)(1).

The net result is that a party submitting a proper motion and affidavit under section 144 can get two bites of the apple.  If, after considering all the circumstances, the judge declines to grant recusal pursuant to section 455(a) & (b)(1), the judge still must determine the legal sufficiency of the affidavit filed pursuant to section 144.  If that affidavit is sufficient on its face, the motion must be referred to another judge for a determination of its merits under section 144.

*Sibla*, 624 F.2d at 867-68 (internal citations omitted).

A party seeking recusal of a judicial officer bears the burden of alleging facts showing that recusal is warranted.  *DeNardo v. Mun. of Anchorage*, 974 F.2d 1200, 1201 (9th Cir. 1992).  "An affidavit filed pursuant to [28 U.S.C. § 144] is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source."  *Sibla*, 624 F.2d at 868; *see also Rademacher v. City of Phoenix*, 442 F. Supp. 27, 29 (D. Ariz. 1977) (explaining that 28 U.S.C. § 144 "must be given the utmost of strict construction to safeguard the judiciary from frivolous attacks upon its dignity and integrity" and "to prevent abuse and to insure orderly functioning of the judicial system") (citations omitted).  Mere conclusory allegations do not establish a basis for recusal, *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 566 (9th Cir. 1995); *see also Sibla*, 624 F.2d at 868, nor do "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible," *Liteky v. United States*, 510 U.S. 540, 555 (1994).  *See also United States v. Holland*, 519 F.3d 909, 914 n.5 (9th Cir. 2008) (quoting list of "various matters which will not ordinarily require recusal" as set forth in *United States v. Cooley*, 1 F.3d 985, 993-94 (10th Cir. 1993)).

## 2. Discussion

### a. Plaintiff is not entitled to relief under 28 U.S.C. § 144.

As a starting matter, the Court notes that although Plaintiff designates a four-line paragraph after the signature block of his Motion for Recusal as the required "Affidavit Under 28 U.S.C. § 144" (*see* Mot. for Recusal 2), Plaintiff's four-line paragraph is neither a sworn statement nor otherwise made under penalty of perjury such that it would have "like force and effect" of an affidavit. *See* 28 U.S.C. § 1746. Even viewing Plaintiff's Motion for Recusal as a whole,[2] the Motion for Recusal is similarly neither a sworn statement nor otherwise made under penalty of perjury. Therefore, Plaintiff is not entitled to relief under 28 U.S.C. § 144 because Plaintiff has failed to comply with the requirement to produce an affidavit. *Sibla*, 624 F.2d at 867; *Rademacher*, 442 F. Supp. at 29; *see, e.g.*, *Caldarone v. Caldarone*, No. 20-cv-00472-DKW-KJM, 2020 WL 8642248, at *1 n.1 (D. Haw. Nov. 25, 2020) ("Though Caldarone titles his motion, 'Affidavit' and refers to it as an 'affidavit/declaration,' that does not make it so. Because the same was not dated nor sworn under penalty of perjury, it does not operate as an affidavit." (citations omitted))). The Court thus turns to question of "whether all the circumstances call for recusal under the self-enforcing provisions of section 455(a) & (b)(1)[.]" *Sibla*, 624 F.2d at 868.

### b. The Court discerns no basis for recusal under 28 U.S.C. § 455(a) and (b)(1).

"[G]o[ing] beyond the section 144 affidavit and consider[ing] the merits of the motion pursuant to section 455(a) & (b)(1)," *Sibla*, 624 F.2d at 868, the Court finds that recusal is not warranted. First, the basis of Plaintiff's assertion of bias—the Court's use of screening orders in dismissing Plaintiff's previous cases—is not "an extrajudicial source" of prejudice or personal bias. *Id.*; *Liteky*, 510 U.S. at 551.

---

[2] "A document filed *pro se* is 'to be liberally construed[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Second, the undersigned was not presiding over the two cases cited in his motion that Plaintiff identifies (*Zajradhara v. Northern Marianas College*, No. 1:24-cv-00006; and *Zajradhara v. David DLG Atalig*, No. 1:22-cv-00014) as the factual basis for recusal. To the contrary, the undersigned determined recusal was appropriate in both cases before he filed the instant motion. *See Zajradhara v. N. Marianas Coll.*, No. 1:24-cv-00006, ECF No. 9 (D. N. Mar. I. May 24, 2024) (order of self-recusal); *Zajradhara v. Atalig*, No. 1:22-cv-00014, ECF No. 19 (D. N. Mar. I. Feb. 19, 2025) (order of self-recusal). *After* the undersigned recused from both cases, screening orders dismissing Plaintiff's claims were issued. *See Zajradhara v. N. Marianas Coll.*, No. 1:24-cv-00006, ECF No. 18 (D. N. Mar. I. Dec. 23, 2024); *Zajradhara v. Atalig*, No. 1:22-cv-00014, ECF No. 33 (D. N. Mar. I. Aug. 26, 2025). Subsequently, *Zajradhara v. Northern Marianas College* was dismissed with prejudice, No. 1:24-cv-00006, ECF No. 29 (D. N. Mar. I. Mar. 6, 2025), and *Zajradhara v. Atalig* remains open pending screening of the Fifth Amended Complaint, *see* No. 1:22-cv-00014, ECF No. 41 (D. N. Mar. I. Oct. 6, 2025).

Third, Plaintiff's contentions about the use of screening orders misunderstand the legal basis for screening orders and the standard for reviewing complaints pursuant to Congress's intent to "require[] a district court to dismiss an in forma pauperis complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). As the Court has repeatedly explained, at the screening stage, for any of Plaintiff's complaints to survive dismissal, the question is not whether Plaintiff has "evidence of defamation, retaliation, and reputational harm in prior filings" or whether a "neutral arbiter would address such claims rather than rely solely on procedural dismissals." (Mot. for Recusal 1 ("Evidence of Bias").) Instead, Plaintiff—like any other plaintiff who brings a claim in any federal district court, *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009)—must merely plead sufficient factual matter within the four corners of the complaint that permits the Court to

discern a legally cognizable claim before his case can proceed further to discovery and final disposition on the evidence and ultimate merits of his claims. *See, e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("First, to be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."); *Iqbal*, 556 U.S. at 684-85 ("[T]he question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process.").

And fourth, Plaintiff's assertions about being denied "opportunity to amend" border on frivolity. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) ("The word 'frivolous' . . . is a shorthand that this court has used to denote a filing that is both baseless and made without a reasonable and competent inquiry."); Fed. R. Civ. P. 11(b). In the Court's previous screening order in this case, after explaining the defects in Plaintiff's original Complaint, the Court expressly stated:

> For the foregoing reasons, the Court grants Zajradhara's Application to proceed without paying fees or costs but dismisses Zajradhara's Complaint for failure to state a claim upon which relief may be granted and failure to allege diversity jurisdiction. This dismissal is without prejudice. *The Court grants Zajradhara leave to amend his Complaint* no later than February 13, 2025. Failure to do so may result in dismissal of this action. The first amended complaint must—independent of the original complaint—allege sufficient facts regarding each named Defendant.

(Screening Order 11-12 (emphasis added; boldface removed).) The Court's review of Plaintiff's other cases reveal that Plaintiff has been consistently afforded opportunities to amend his

1   complaints after an initial screening order found his pleadings insufficient to survive dismissal.[3]

2   As such, Plaintiff's sweeping, conclusory assertions to the contrary are wholly unsupported by the

3   record across all of his cases.

4       Therefore, the Court finds no basis warranting recusal from presiding over this case.

5   Plaintiff's proffered reasons purporting to justify recusal fail to demonstrate that the undersigned

6   has "a personal prejudice or bias concerning" him.  28 U.S.C. § 455(b)(1).  Nor would "a

7   reasonable person with knowledge of all the facts . . . conclude that the [undersigned's] impartiality

8   might reasonably be questioned."  *McTiernan*, 695 F.3d at 891 (quoting *Hernandez*, 109 F.3d at

9   1453); *see also Holland*, 519 F.3d at 913 ("The 'reasonable person' is not someone who is

10  'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.'"

11  (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990))).  To be sure, Plaintiff's Motion for

12  Recusal consists of little more than legally unfounded beliefs about the propriety of screening

13  orders, "baseless personal attacks on" the undersigned, and "threats or other attempts to intimidate"

14  the undersigned—all of which is not a basis for recusal.  *Holland*, 519 F.3d at 914 n.5 (quoting

15  *Cooley*, 1 F.3d at 994).  Accordingly, the Court is constrained to deny Plaintiff's Motion for

16  Recusal.  *See also Holland*, 519 F.3d at 912 ("[I]n the absence of a legitimate reason to recuse

17

18

---

19  [3] *See, e.g.*, *Zajradhara v. GIG Partners*, No. 1:20-cv-00030, ECF No. 2 (D. N. Mar. I. Jan. 14, 2021)
    (screening order dismissing complaint with leave to amend apparent Title VII claim); *Zajradhara v.*

20  *Benavente*, No. 1:21-cv-00006, ECF No. 3 (D. N. Mar. I. Aug. 13, 2021) (screening order dismissing
    complaint with leave to amend to plead jurisdiction over potential retaliatory denial of benefits claim);

21  *Zajradhara v. PC Bargain Corp.*, No. 1:21-cv-00021, ECF No. 12 (D. N. Mar. I. May 18, 2023) (third
    screening order dismissing complaint without leave to amend after two prior dismissals with leave to

22  amend); *Zajradhara v. Cabrera*, No. 1:21-cv-00022, ECF No. 3 (D. N. Mar. I. Aug. 18, 2022) (screening
    order dismissing complaint with leave to amend claims under 42 U.S.C. §§ 1983 and 2000d); *Zajradhara*

23  *v. Atalig*, No. 1:22-cv-00014, ECF No. 33 (D. N. Mar. I. Aug. 26, 2025) (Tydingco-Gatewood, J.) (fourth
    screening order dismissing complaint with leave to amend); *Zajradhara v. N. Marianas Coll.*, No. 1:24-cv-

24  00006, ECF No. 29 (D. N. Mar. I. Mar. 6, 2025) (Tydingco-Gatewood, J.) (order dismissing action with
    prejudice after prior grant of extension of deadline to file amended complaint).

1    himself, 'a judge should participate in cases assigned.'" (quoting *Maier v. Orr*, 758 F.2d 1578,

2    1583 (Fed. Cir. 1985))).

3    **B. Plaintiff's Amended Complaint**

4    **1. Legal Standard**

5    As Plaintiff is proceeding without prepayment of costs or fees (*see* Screening Order 2, 11

6    (granting Plaintiff's Application)), the Court is "require[d]" to screen Plaintiff's Amended

7    Complaint, *Lopez*, 203 F.3d at 1127, and ascertain whether it is "frivolous or malicious," "fails to

8    state a claim on which relief may be granted," or "seeks monetary relief against a defendant who

9    is immune from such relief," 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A complaint survives dismissal

10   "only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim

11   to relief that is plausible on its face.'" *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010)

12   (quoting *Iqbal*, 556 U.S. at 678); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.

13   1998) (noting 28 U.S.C. § 1915(e)(2)(B)(ii)'s "failure to state a claim" language "parallels the

14   language of Federal Rule of Civil Procedure 12(b)(6)" and applying standard of review for Fed.

15   R. Civ. P. 12(b)(6) dismissals to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii)). A claim is

16   "plausible on its face" where there is sufficient "factual content that allows the court to draw the

17   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

18   678. "[D]etailed factual allegations" are not required; however, a plaintiff must plead "more than

19   an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (rejecting "formulaic

20   recitation of the elements of a cause of action" or "naked assertions devoid of further factual

21   enhancement" (internal quotation marks and brackets omitted)).

22   Plaintiff is proceeding *pro se*; as such, his Amended Complaint "must be held to less

23   stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89,

24

1  94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Furthermore, as Plaintiff raises a

2  civil rights claim, the Court has an obligation "to construe the pleadings liberally and to afford

3  [Plaintiff] the benefit of any doubt."  *Hebbe*, 627 F.3d at 342 (quoting *Bretz v. Kelman*, 773 F.2d

4  1026, 1027 n.1 (9th Cir. 1985)).  The Court, however, will not "accept any unreasonable inferences

5  or assume the truth of legal conclusions cast in the form of factual allegations," *Ileto v. Glock Inc.*,

6  349 F.3d 1191, 1200 (9th Cir. 2003), and "may not supply essential elements of the claim that were

7  not initially pled," *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

8  "Vague and conclusory allegations of official participation in civil rights violations are not

9  sufficient to [survive dismissal]."  *Id.*

10  ## 2.  Discussion

11  ### a.  The only bases for subject-matter jurisdiction over Plaintiff's three claims are
12  federal-question jurisdiction over Plaintiff's 42 U.S.C. § 1983 claim and supplemental jurisdiction over Plaintiff's state-law claims.

13  Plaintiff alleges three causes of action:  (1) defamation *per se* under CNMI common law;

14  (2) IIED, also arising under CNMI common law; and (3) a 42 U.S.C. § 1983 claim premised on

15  Defendants' retaliating against Plaintiff for exercising his First Amendment rights.  (Am. Compl.

16  3.)  Plaintiff further alleges that the Court has subject-matter jurisdiction over his claims based on

17  federal-question jurisdiction and diversity of citizenship.

18  In view of the Court's "limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*,

19  511 U.S. 375, 377 (1994), the Court's corresponding "independent obligation to ensure that [it]

20  does not exceed the scope of [its] jurisdiction," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S.

21  428, 434 (2011); *see also* Fed. R. Civ. P. 12(h)(3), and the differing possible bases for asserting

22  jurisdiction over Plaintiff's state-law claims, *see* 28 U.S.C. § 1367 (setting forth bases for

23  exercising supplemental jurisdiction), the Court must first address Plaintiff's asserted bases for the

24  Court's subject-matter jurisdiction over his claims.

1    As to Plaintiff's 42 U.S.C. § 1983 claim, the Court has original subject-matter

2    jurisdiction—specifically, federal-question jurisdiction—over the claim because Plaintiff's claim

3    "aris[es] under the . . . laws . . . of the United States."  28 U.S.C. § 1331.

4    As to Plaintiff's defamation *per se* and IIED claims, the Court does not have federal-

5    question jurisdiction over the claims because they arise under CNMI law, not federal law.  *See,*

6    *e.g.*, *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992).  As to diversity jurisdiction, "[a] case

7    falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of

8    citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who

9    are citizens of the same State."  *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998); 28

10   U.S.C. § 1332(a).  The Ninth Circuit has explained that for diversity jurisdiction purposes,

11   
12          To be a citizen of a state, a natural person must first be a citizen of
             the United States.  The natural person's state citizenship is then
             determined by her state of domicile, not her state of residence.  A
13           person's domicile is her permanent home, where she resides with
             the intention to remain or to which she intends to return.

14   *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (internal citations omitted).

15   Here, Plaintiff alleges in his Amended Complaint:

16          **Diversity of Citizenship (28 U.S.C. § 1332):**  Plaintiff is citizen of
             the United States residing in the Commonwealth of the Northern
17           Mariana Islands (CNMI).   Defendants are citizens or entities
             incorporated in the CNMI.  The amount in controversy exceeds
18           $75,000, exclusive of interests and costs.

19   (Am. Compl. 1.)  Although Plaintiff merely pleads that he is "residing" in the CNMI, Plaintiff's

20   other allegations indicate that he is domiciled in the CNMI as his "permanent home, where [he]

21   resides with the intention to remain[.]"  *Kanter*, 265 F.3d at 857.  (*See* Am. Compl. 2-3 (describing

22   Plaintiff's advocacy efforts in the CNMI, retaliation by the CNMI government, and alleged loss of

23   employment opportunities).)  As such, the Court lacks diversity jurisdiction over Plaintiff's state-

24

law claims because diversity of citizenship is not "complete":  Plaintiff and Defendants are all citizens of the CNMI.

The Court's lack of federal-question and diversity jurisdiction over Plaintiff's state-law claims, however, does not automatically require dismissal of the state-law claims because the Court has original jurisdiction over Plaintiff's 42 U.S.C. § 1983 claim and could exercise supplemental jurisdiction over the state-law claims so long as the state-law claims "are so related" to Plaintiff's 42 U.S.C. § 1983 claim such "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact.  But if . . . a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.").  Here, Plaintiff's state-law claims are based on the same alleged course of conduct on the part of Defendants, namely, that Defendants published a series of news articles concerning Plaintiff's advocacy and criticism of the CNMI government and refused Plaintiff's repeated requests for correction and retraction, and such alleged conduct caused Plaintiff injury.  (Am. Compl. 1-2.)  As such, the Court could exercise supplemental jurisdiction over Plaintiff's state-law claims.  Whether the Court should exercise supplemental jurisdiction, however, is a matter left to the Court's discretion.  28 U.S.C. § 1367(c) ("The district courts *may decline* to exercise supplemental jurisdiction . . . ." (emphasis added)); *Gibbs*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.").  Should Plaintiff's 42 U.S.C. § 1983 claim be dismissed—*i.e.*, "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3)—"the state claims should be dismissed as well[,]" *Gibbs*, 383 U.S. at 726; *but cf. also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3

(9th Cir. 1997) ("expect[ing]" that district court will still give statement of reasons for declining to exercise supplemental jurisdiction over state-law claims, notwithstanding holding that when district court elects to exercise supplemental jurisdiction, district court need not *sua sponte* examine whether exercise of supplemental jurisdiction should be denied).

The Court now turns to the sufficiency of Plaintiff's allegations in support of his 42 U.S.C. § 1983 claim.

**b. Plaintiff fails to state a claim for relief as to his 42 U.S.C. § 1983 claim—the sole claim over which the Court has original jurisdiction.**

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that "(1) a person acting under color of State [or Territory] law; (2) subjects or causes to be subjected to deprivation; (3) a U.S. citizen or person in the jurisdiction of the United States; (4) of a right, privilege, or immunity secured by the Constitution and laws." *Chaudhry v. Aragón*, 68 F.4th 1161, 1169 (9th Cir. 2023); *Sanderlin v. Dwyer*, 116 F.4th 905, 910-11 (9th Cir. 2024) (setting forth elements for 42 U.S.C. § 1983 claim premised on retaliatory violation of First Amendment rights); *see also Temengil v. Trust Terr. of Pac. Islands*, 881 F.2d 647, 651 (9th Cir. 1989) ("Sections 1981 and 1983 of Title 42 of the United States Code were made applicable to the Northern Mariana Islands through section 502 of the Covenant."). Here, Plaintiff's Amended Complaint fails to state a claim for relief under 42 U.S.C. § 1983 because Plaintiff has not pleaded any factual allegations to establish that Defendants are persons "acting under color" of CNMI law and therefore fails to satisfy the first element of his claim. *Chauhdry*, 68 F.4th at 1169. Plaintiff alleges that Defendants published allegedly defamatory articles in a scheme to discredit and silence Plaintiff's criticisms of the CNMI government and political advocacy that are in direct conflict with Defendants' goals as affiliates of the UFO. (Am. Compl. 3.) But nowhere in his Amended Complaint does Plaintiff set forth facts suggesting that any Defendant "is a state official" or "acted together with or has obtained

significant aid from state officials," or that the "conduct is otherwise chargeable to the [CNMI]." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  Instead, Plaintiff only offers one sentence of speculation:  "To the extent Defendants acted under color of state law or in concert with state actors, their actions retaliated against Plaintiff for exercising his First Amendment rights."  (Am. Compl. 3.)  Such a "naked assertion[] devoid of further factual enhancement" is insufficient to establish a required element for his 42 U.S.C. § 1983 claim.  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *see also Ileto*, 349 F.3d at 1200 ("unreasonable inferences" and "legal conclusions cast in the form of factual allegations" are not to be credited); *Ivey*, 673 F.2d at 268 (vague, conclusory allegations of "official participation in civil rights violations" are insufficient to avoid dismissal).

Therefore, Plaintiff's 42 U.S.C. § 1983 claim must be dismissed for failure to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); *Lopez*, 203 F.3d at 1127.  The dismissal of the 42 U.S.C. § 1983 claim is with prejudice and without leave to amend because (1) it would be impossible for Plaintiff to correct the defect through additional pleading, *Lopez*, 203 F.3d at 1130-31, and (2) Plaintiff was already on notice of the requirements for making out his 42 U.S.C. § 1983 claim, including this exact same defect, as identified and discussed in the Court's previous screening order (*see* Screening Order 8-10 (discussing state action doctrine and state actor requirement)), *see Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (denial of leave to amend appropriate where amendment would be futile and district court has previously given leave to amend).

### c. The Court will exercise its discretion and decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

With the dismissal of the sole claim over which the Court has original jurisdiction, the Court must determine whether to exercise supplemental jurisdiction over Plaintiff's state-law

claims.  28 U.S.C. § 1367(c)(3); *see also Acri*, 114 F.3d at 1001 (explaining that "actually exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in [28 U.S.C. § 1367(c)] is implicated is a responsibility that district courts are duty-bound to take seriously").  The Supreme Court has instructed that a district court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). In addition, "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims" may be relevant factors for consideration.  *Id.*

Here, a "reasoned consideration," *Acri*, 114 F.3d at 1001, of the "the values of judicial economy, convenience, fairness, and comity" points against the exercise of supplemental jurisdiction over Plaintiff's state-law claims.  The values of judicial economy and convenience favor permitting Plaintiff to litigate all of his claims, arising from the same instances of Defendants' alleged conduct, in this single proceeding.  *Gibbs*, 383 U.S. at 725.  The Ninth Circuit has indicated, however, that judicial economy and convenience interests are at their lowest at this early stage of litigation, especially where state-law claims raise additional issues that do not depend on the disposition of the joined federal claim and do not implicate any substantial federal interest. *Arroyo v. Rosas*, 19 F.4th 1202, 1214-15 (9th Cir. 2021) (district court erred in refusing to exercise supplemental jurisdiction after summary judgment in favor of plaintiff on federal claim where "correct disposition" of state-law claim "follows obviously and ineluctably" from disposition of federal claim); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (district court did not err in declining to exercise supplemental jurisdiction over state-law claims where state-law

1    claims raise additional issues that survive disposition of federal claim); *Otto v. Heckler*, 802 F.2d

2    337, 338 (9th Cir. 1986) ("The district court, of course, has the discretion to determine whether its

3    investment of judicial energy justifies retention of jurisdiction, or if it should more properly

4    dismiss the claims without prejudice."  (internal citation omitted)); *see also Gibbs*, 383 U.S. at 725

5    (conditioning power to hear state-law claims in single proceeding with federal claim on the

6    existence of the "substantiality of the federal issues").

7        Fairness does not compel the conclusion that Plaintiff must be allowed to proceed in this

8    Court.  Plaintiff would not be prejudiced in being required to refile his state-law claims in the

9    CNMI courts because CNMI courts possess the authority and jurisdiction to award the types and

10   extent of relief that otherwise would be available in this Court for the same scope[4] of injuries.  *See*

---

12   [4] Plaintiff does not specifically identify the dates of publication for each article that allegedly injured him;
     instead, the only mention of a timeframe is set forth at the outset of the Amended Complaint's "Statement

13   of Claims":  "The defamatory publications began around 2017-2018 and continue to the present, despite
     Plaintiff's repeated notifications to Defendants of the falsity of their reporting and requests for corrections

14   or retractions."  (Am. Compl. 2.)

15        Whether in this Court or in the CNMI courts, the applicable statute of limitations is found in CNMI
     law.  *Walker v. Armco Steel Corp.*, 446 U.S. 740, 744-46 (1980) (state statute of limitations governs state-

16   law claims filed in federal court).  Here, the statute of limitations is two years.  7 CMC § 2503 ("The
     following actions shall be commenced only within two years after the cause of action accrues:  (a) Actions

17   for . . . slander; . . . (d) Actions for injury to . . . one caused by the wrongful act . . . of another . . . .").
     Notwithstanding Plaintiff's lack of specific factual allegations tying the articles to Plaintiff's alleged

18   injuries, Plaintiff's recovery—regardless of which court proceeds on his claims—appears to be limited to
     the articles published within the two years immediately preceding Plaintiff's June 23, 2024 filing of his

19   original Complaint in this matter or the articles that caused harm to Plaintiff within the two years
     immediately preceding his filing of his original Complaint.  RESTATEMENT (SECOND) OF TORTS § 899 cmt.

20   c (AM. L. INST. 1979) ("A tort is ordinarily not complete until there has been an invasion of a legally
     protected interest of the plaintiff. . . . A cause of action for defamation is complete at the time of publication,

21   except when the statement is not actionable until harm has been caused, in which case the cause of action
     matures when harm is first caused."); *Tan v. Younis Art Studio*, 2007 MP 11, ¶¶ 14, 30 (N. Mar. I. 2007)

22   (explaining that RESTATEMENT (SECOND) OF TORTS, as supplemented by First Amendment considerations,
     is controlling in defining cause of action for defamation); *see also Sekisui House, Ltd. v. Super. Ct.*, 1999

23   MP 21, ¶ 18 (N. Mar. I. 1999) (noting that IIED claim based on defamatory publications "is dependent upon
     the claim for defamation," such that dismissal of defamation claim required dismissal of IIED claim).  In
     other words, requiring Plaintiff to refile his state-law claims in the CNMI courts would not prejudice him

24   because it would not change the temporal scope of injuries for which he could recover.

19

N. Mar. I. Const. art. IV, § 2 (establishing Commonwealth Superior Court as court of general jurisdiction); 1 CMC § 3202 (codifying same).   Furthermore, the statute of limitations on Plaintiff's state-law claims "shall be tolled while the claim[s are] pending and for a period of 30 days after [they are] dismissed unless State law provides for a longer tolling period[,]" 28 U.S.C. § 1367(d).

Comity militates against proceeding on Plaintiff's state-law claims in this Court. Ascertaining the exact state of relevant CNMI law requires application of the following provision of the Commonwealth Code:

> [T]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed[,] as generally understood and applied in the United States, shall be the rules of decision in the courts of the [CNMI], in the absence of written law or local customary law to the contrary . . . .

7 CMC § 3401.  "Section 3401 requires cautious application; courts must be vigil, since a survey of local law is necessary before resorting to the Restatement . . . ."  *Tan v. Younis Art Studio, Inc.*, 2007 MP 11, ¶ 14 (N. Mar. I. 2007).  As defamation and IIED are causes of action that are not defined by "written law or local customary law" of the CNMI, the Court would have to engage in a holistic survey of CNMI case law and the relevant restatements of the law to discern the elements of both causes of action, any related special considerations under the relevant legal doctrines, and what would be required of Plaintiff to make out his case throughout all stages of litigation.  *See id.*

---

In any event, the existence of issues related to the correct application of CNMI's statute of limitations, including determination of when Plaintiff's claims "accrued" within the meaning of 7 CMC § 2503 and the RESTATEMENT (SECOND) OF TORTS, as adopted by the CNMI courts, *see, e.g.*, *Soloviev v. Markoff*, No. 1:14-cv-00019, 2015 WL 1746242, at *2-3 (D. N. Mar. I. Apr. 13, 2015) (noting that 7 CMC § 2503 does not define "accrues," thus requiring survey of CNMI law and restatements), also disfavors the exercise of supplemental jurisdiction because such issues of pure CNMI law are better left for resolution by the CNMI courts.  *Gibbs*, 383 U.S. at 726.

¶¶ 16-30 (defamation); *Charfauros v. Bd. of Elections*, 1998 MP 16, ¶¶ 60-66 (N. Mar. I. 1998) (IIED).  Although the CNMI Supreme Court has previously articulated the elements for both defamation and IIED, *see Tan*, 2007 MP 11, ¶ 30; *Charfauros*, 1998 MP 16, ¶ 62, whether Plaintiff's factual circumstances would be squarely governed by the existing decisions of the CNMI Supreme Court, as opposed to requiring further exploration and application of the principles of the relevant restatements against the backdrop of developments in CNMI case law, remains an open question—consistent with the process of how common law is developed by courts generally. *See Tan*, 2007 MP 11, ¶ 31 (expressly acknowledging that "questions will undoubtedly arise for which the answer lies beyond" the "broad principles" embodied in articulation of elements for defamation and cautioning that "special care must be taken" when "amalgamating local law and Restatement principles" in view of First Amendment considerations); *Charfauros*, 1998 MP 16, ¶¶ 63-66 (discussing comments to RESTATEMENT (SECOND) OF TORTS § 46 (AM. L. INST. 1965) in clarifying scope of the "important duty of courts to guard the gateway to the cause of action" of IIED and expressly noting that liability for IIED may broaden as IIED law continues to develop). Resolving such a question, as with the task of developing the common law of the CNMI, is best left for the tribunals that are most familiar with CNMI law and related policy interests and can issue authoritative statements of CNMI law:  the CNMI courts.  *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

        As such, Plaintiff's state-law claims are subject to the general rule that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  *Id.*  At bottom, Plaintiff's state-law claims are solely against private parties domiciled in the CNMI, arise entirely under CNMI law, do not depend on the resolution of any federal issue, and do not implicate any

substantial federal interest.  The Court is not inclined to invest further judicial resources to adjudicate Plaintiff's state-law claims where the CNMI courts are available as an equally convenient and fair forum for Plaintiff to pursue his claims and obtain authoritative decisions on questions of pure CNMI law.  Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims and will instead dismiss the state-law claims without prejudice. *Id.* at 726-27.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Recusal (ECF No. 10) is DENIED. Plaintiff's 42 U.S.C. § 1983 civil rights claim is DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, and Plaintiff's two state-law claims (defamation *per se* and intentional infliction of emotional distress) are DISMISSED WITHOUT PREJUDICE and without leave to amend his complaint. **Plaintiff is given notice that, should he wish to pursue his state-law claims in the CNMI Superior Court and to the extent they were viable when the original complaint was filed in 2024, the statute of limitations on his state-law claims has been "tolled while the claim[s were] pending and for a period of 30 days after [they were] dismissed unless State law provides for a longer tolling period."** 28 U.S.C. § 1367(d).

In view of the Court's disposition of Plaintiff's Motion for Recusal and the dismissal of all of Plaintiff's claims, Plaintiff's Motion for Status Update and to Expedite (ECF No. 11) is DENIED AS MOOT.  The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED this 17th day of December, 2025.

_____
RAMONA V. MANGLONA
Chief Judge